UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 4:23-cr-00254-1 |
| **v.** ) | |
| ) | |
| **D'MONTRE GREEN,** ) | |
| **Defendant.** ) | |
| ) | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the Public Integrity Section, Criminal Division, United States Department of Justice, and D'Montre Green (hereinafter, the "defendant") enter into the following Plea Agreement:

**Charge and Statutory Penalties**

1. The defendant agrees to plead guilty to Count One of the Information, charging him with wire fraud, in violation of 18 U.S.C. § 1343.

2. The defendant understands that Count One has the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

a) First, the defendant knowingly devised or participated in a scheme to defraud;

b) Second, the defendant did so with intent to defraud;

c) Third, the scheme to defraud involved a materially false pretense, representation, or promise; and

d) Fourth, for the purpose of carrying out the scheme or attempting to do so, the defendant caused an interstate wire communication to take place.

3. The defendant understands that, pursuant to 18 U.S.C. §§ 1343, 3013(a)(2)(A), 3571, and 3583(b)(2), Count One carries a maximum sentence of 20 years of imprisonment; a fine not to exceed $250,000 or twice the gross gain or loss from the offense (whichever is greater); a

$100 special assessment; a three-year term of supervised release; and an obligation to pay any applicable interest or penalties on fines not timely made. Pursuant to 18 U.S.C. § 3583(e)(3), if the defendant violates a condition of supervised release, the Court may revoke the term of supervised release and require the defendant to serve all or part of the term of supervised release in prison, up to 2 years.

4. If the Court accepts the defendant's plea of guilty and the defendant fulfills each of the terms and conditions of this Plea Agreement, the United States agrees that it will not further prosecute the defendant for any crimes described in the attached factual basis or for any conduct of the defendant now known to the Public Integrity Section and to the law enforcement agents working with the Public Integrity Section on the present investigation. This agreement does not provide any limitation of liability arising out of any acts of violence.

**Factual Stipulations**

5. The defendant agrees that the following factual stipulations fairly and accurately describe the defendant's actions and involvement in the offense to which the defendant is pleading guilty. The defendant knowingly, voluntarily, and truthfully admits the facts set forth below:

a. GREEN was a member of the United States Air Force, which is a component of the United States Department of Defense ("DOD"), from on or about December 13, 2011, to on or about May 18, 2022.

b. In and around April 2017, GREEN was a Staff Sergeant stationed at Royal Air Force Lakenheath ("Lakenheath") in the United Kingdom as a member of the 48th Aircraft Maintenance Squadron.

c. GREEN's home of record was located in Houston, Texas, which is in the Southern District of Texas.

2

d.  Servicemembers are entitled to various DOD allowances depending on where they are stationed, whether they have dependents and where those dependents live, and their rank. One of these allowances is called the Basic Allowance for Housing ("BAH"), which helps servicemembers and their dependents pay for housing. A servicemember on an unaccompanied overseas tour would receive BAH at the with-dependent rate based on the dependent's location.

e.  Payments to servicemembers are managed by the Defense Finance and Accounting Service ("DFAS"), which is headquartered in Indianapolis, Indiana.

f.  GREEN was divorced on or about March 1, 2017. After his divorce, GREEN would no longer be entitled to certain servicemember allowances because he did not have any dependents.

g.  Beginning in or around June 2017 and continuing until in or around April 2020, in the Southern District of Texas and elsewhere, the defendant, D'MONTRE GREEN, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of material false and fraudulent pretenses, representations, and promises; specifically, GREEN received increased housing allowance payments from the DOD because of his false statements that his spouse, Person 1, lived in San Francisco, California.

h.  It was the purpose of the scheme for GREEN to enrich himself by submitting false statements to the DOD in order to receive increased housing allowance payments to which he was not entitled.

i.  In and around April 2017, GREEN sent messages to at least 93 women, via text message and mobile applications, soliciting marriage in exchange for payment. GREEN explained to these women that he wanted to marry them in order to increase the amount of money the DOD would pay him in allowances and that he would share a portion of these payments with his new

spouse.

      j.      For example, on or about April 24, 2017, Green had the following exchange with Person 2:

| | |
|---|---|
| GREEN: | Hello I have an offer if your interested where I'd be paying you every month, similar to me being your sugar daddy however no sex involved. |
| Person 2: | Ok |
| GREEN: | Btw I find you to be extremely gorgeous. So basically I would get paid extra from my job by having a spouse/dependent which in return I'd be paying you 500 every month for the next 4 years or however long we agree if your interested. And no I'm not expecting you to live with me or do any favors, just a title as a wife. |
| GREEN: | If there's anything you'd like I would be willing to negotiate |
| Person 2: | You want me to legally marry you? |
| GREEN: | Yes |
| Person 2: | Oh no I'm coo 500 not enough to do that |
| GREEN: | How much would you require a month? |
| Person 2: | 2000 |
| GREEN: | Each month? |
| Person 2: | Yea you want me to marry you |
| GREEN: | Unfortunately that would[n't] work out for me. The extra incentive I'd be getting is a total of 1300 and I was hoping to split that amount |

      k.      On or about April 25, 2017, GREEN married Person 1 by proxy. At the time they were married, GREEN was stationed at Lakenheath and Person 1 was in Texas. GREEN completed and signed a Taylor County, Texas, "Affidavit of Absent Applicant for Marriage License." On that affidavit, GREEN listed Person 1's address as within Abilene, Texas.

4

l.  GREEN married Person 1 for the purpose of obtaining increased military benefits, including BAH, to which he would otherwise not be entitled.

m.  On or about June 16, 2017, GREEN completed and signed a DD Form 2367, entitled "Individual Overseas Housing Allowance (OHA) Report." GREEN marked that he was entitled to a cost-of-living or overseas housing allowance for dependents residing elsewhere. GREEN falsely specified the location of his dependents as "CA 94106." This ZIP Code does not exist. GREEN attached a copy of his marriage certificate showing that he had married Person 1.

n.  On or about June 16, 2017, GREEN completed and signed an AF Form 594, entitled "Application and Authorization to Start, Stop or Change Basic Allowance for Quarters (BAQ) or Dependency Redetermination." GREEN claimed a housing allowance for his dependent spouse, Person 1, effective April 25, 2017. GREEN falsely certified that his spouse lived in "CA 94106." This ZIP Code does not exist.

o.  On or about June 23, 2017, GREEN completed and signed a DD Form 1561, a "Statement to Substantiate Payment of Family Separation Allowance (FSA)." GREEN falsely listed Person 1's address as being in San Francisco, California. On or about June 23, 2017, GREEN signed a 48th Fighter Wing "Acknowledgment of Understanding – Family Separation Housing Allowance" in which he certified his understanding that he was "required to inform the Finance Squadron immediately" of any changes to his personnel circumstances or orders.

p.  GREEN knew that Person 1 lived in Abilene, Texas, at the time he submitted the forms. At no point did Person 1 live in California. GREEN falsely stated that Person 1 lived in California in order to obtain increased payments from the DOD.

q.  GREEN's submission of these forms caused the DOD to pay him certain servicemember allowances, including BAH.

5

r. GREEN routed a portion of the money he received from these DOD allowances to Person 1.

s. As summarized in the chart below, GREEN received surplus BAH each month, because the BAH is higher in San Francisco than in Abilene. The surplus BAH that GREEN acquired during the scheme totaled $112,023:

| Year | Pay Grade | Monthly BAH, Abilene | Monthly BAH, San Francisco | Monthly Gain | # of Months | Total Gain |
|---|---|---|---|---|---|---|
| 2017 | E-4 | $1,044 | $4,032 | $2,988 | 8 | $23,904 |
| 2018 | E-4 | $1,041 | $4,200 | $3,159 | 9 | $28,431 |
| 2018 | E-5 | $1,104 | $4,329 | $3,225 | 3 | $9,675 |
| 2019 | E-5 | $1,062 | $4,368 | $3,306 | 12 | $39,672 |
| 2020 | E-5 | $1,167 | $4,614 | $3,447 | 3 | $10,341 |
| | | | | | Total = | $112,023 |

t. On or about March 13, 2020, in the Southern District of Texas and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, GREEN transmitted and caused to be transmitted by means of wire communication in and affecting interstate and foreign commerce the following writings, signs, signals, pictures, and sounds: GREEN's false statements to the DOD caused DFAS to direct deposit funds, including elevated BAH obtained through the scheme, into a Community Bank account belonging to GREEN.

**Sentencing**

6. The defendant is aware that the sentence will be imposed by the court after considering the United States Sentencing Guidelines and related Policy Statements (hereinafter "U.S.S.G." or "Sentencing Guidelines"). The defendant acknowledges and understands that the

court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation conducted by the court's probation office, which will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise that advisory sentence up to and including the statutory maximum sentence, or lower that advisory sentence. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose that sentence, that the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and that such ultimate sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

7. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Plea Agreement, the United States further reserves the right to make any recommendation it deems appropriate as to the quality and quantity of punishment.

8. The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not

binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

**Sentencing Guidelines Stipulations**

9. The defendant understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines as set forth in the *United States Sentencing Commission Guidelines Manual* for 2018. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

   a. Offense Level under the Guidelines

Base Offense Level (U.S.S.G § 2B1.1(a)(1)):                              7

   Loss Amount (U.S.S.G § 2B1.1(b)(1)(E)):                               +8

   Scheme Committed Outside U.S. (U.S.S.G § 2B1.1(b)(10)):               +2

Adjusted Offense Level: 17

   b. Acceptance of Responsibility

Provided that the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the United States, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, the United States agrees that a two-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a).

The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

   i. fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

      ii.  challenges the adequacy or sufficiency of the United States' offer of proof at any time after the plea is entered;

      iii.  denies involvement in the offense;

      iv.  gives conflicting statements about that involvement or is untruthful with the Court, the United States, or the Probation Office;

      v.  fails to give complete and accurate information about the defendant's financial status to the Probation Office;

      vi.  obstructs or attempts to obstruct justice, prior to sentencing;

      vii.  has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

      viii.  fails to appear in court as required;

      ix.  after signing this Plea Agreement, engages in additional criminal conduct; or

      x.  attempts to withdraw the plea of guilty.

If the defendant has accepted responsibility as described above, and the defendant's offense level is 16 or greater, the United States agrees that an additional one-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(b), because the defendant has assisted authorities by providing timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines Offense Level is 14.

      c.      <u>Criminal History Category</u>

Based upon the information now available to the United States (including representations by the defense), the defendant has no criminal history. Thus, the defendant's Criminal History Category is I.

      d.      <u>Applicable Guideline Range</u>

Based upon the calculations set forth above, the defendant's stipulated Sentencing Guidelines range is 15 to 21 months (the "Stipulated Guidelines Range"). In addition, the parties agree that should the Court impose a fine, at Guidelines Offense Level 14, the applicable fine range is $7,500 to $75,000. The defendant agrees and understands that the Court may calculate the advisory Sentencing Guidelines range differently than the above.

The parties agree that under the Sentencing Guidelines neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Court consider such a departure or adjustment.

**Agreement as to Sentencing Allocution**

10.    The parties further agree that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a). In addition, although not binding on the Probation Office or the Court, neither party will seek a variance, *i.e.*, a sentence outside of the Stipulated Guidelines Range or suggest that the Court consider a sentence outside of the Stipulated Guidelines Range, unless otherwise provided in this Plea Agreement. Nothing in this Plea Agreement limits the right of the parties to make any arguments regarding where within the Stipulated Guidelines Range (or such other Sentencing Guidelines range as the Court may determine) the defendant should be sentenced or to seek an

appropriately adjusted sentencing range if it is determined based upon new information that the defendant's Criminal History Category is different from that set forth above.

### Court Not Bound by the Plea Agreement

11. It is understood that, pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B), the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues. In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

### Trial Rights

12. The defendant understands and agrees that by pleading guilty in this case the defendant agrees to waive certain rights, including the following:

    a. the right to plead not guilty and to persist in that plea;

    b. the right to a jury trial;

    c. the right to be represented by counsel—and if necessary to have the Court appoint counsel—at trial and at every other stage of the proceeding;

    d. the right at trial to confront and cross-examine adverse witnesses, and to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

    e. the right to any further discovery or disclosures of information not already provided at the time of the entry of the guilty plea, other than information required to be disclosed

under Federal Rule of Criminal Procedure 32(i)(2) and exculpatory or impeachment information casting doubt upon sentencing factors.

**Venue**

13. The defendant waives any challenge to venue in this district.

**Appeal, Freedom of Information Act, and Privacy Act Waiver**

14. The defendant is aware that the defendant has the right to challenge the defendant's sentence and guilty plea on direct appeal. The defendant is also aware that the defendant may, in some circumstances, be able to argue that the defendant's guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255). Knowing that, and in exchange for the promises made by the United States in entering this Plea Agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, including any claim that the statute to which the defendant pled is unconstitutional and/or that the conduct admitted as part of the factual basis does not fall within the scope of the statutes, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

    a. Notwithstanding the waiver provision above, if the United States appeals from the sentence, then the defendant may file a direct appeal of the defendant's sentence.

  b. If the United States does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

   i. that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth above;

   ii. challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

   iii. challenging a decision by the sentencing judge to impose an "upward variance," pursuant to 18 U.S.C. § 3553(a), above the final Sentencing Guidelines range determined by the Court; and

   iv. that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

15. By signing this Plea Agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in Paragraph 14 of this Plea Agreement with the defendant's counsel. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

16. The defendant's waiver of rights in Paragraph 14 shall not apply to appeals or challenges based on new legal principles in the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court cases decided after the date of this Plea Agreement that are

held by the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court to have retroactive effect.

**Agreed Restitution**

17.  Pursuant to 18 U.S.C. § 3663(a)(3), the United States and the defendant stipulate and agree the defendant will pay restitution to the United States Treasury in the amount of $112,023.

**Release**

18.  The defendant acknowledges that while the United States will not seek a change in the defendant's release conditions pending sentencing, the final decision regarding the defendant's bond status or detention will be made by the Court at the time of the defendant's guilty plea. Should the defendant engage in further criminal conduct or violate any conditions of release prior to sentencing, however, the United States may move to change the defendant's conditions of release or move to revoke the defendant's release.

**Breach of Agreement**

19.  The defendant understands and agrees that if, after entering this Plea Agreement, the defendant fails specifically to perform or to fulfill completely each and every one of the defendant's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, the defendant will have breached this Plea Agreement. In the event of such a breach: (a) the United States will be free from its obligations under the Plea Agreement; (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the United States will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by the defendant and any of the information or materials

provided by the defendant, including such statements, information, and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including the defendant's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

20. The defendant understands that Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights arising under these rules.

21. The defendant understands and agrees that the United States shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. The defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

22. Nothing in this Plea Agreement shall be construed to permit the defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the defendant from prosecution for any crimes not included within this Plea Agreement or committed by the defendant after the execution of this Plea Agreement. The defendant understands and agrees that the United States reserves the right to prosecute the defendant for any such offenses. The defendant further understands that any perjury, false statements or declarations, or obstruction of justice relating to the defendant's obligations under this Plea Agreement shall constitute a breach of this Agreement. In the event of such a breach, however, the defendant will not be permitted to withdraw this guilty plea.

**Waiver of Statute of Limitations**

23. It is further agreed that should any conviction following the defendant's plea of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution. It is the defendant's intent in entering this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

**Complete Agreement**

24. No agreements, promises, understandings, or representations have been made by the parties or their counsel—either orally, in writing, or by any other means—other than those contained in writing herein and in the accompanying addendum to this plea agreement, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by the defendant, defense counsel, and a prosecutor for the Public Integrity Section.

25. The defendant further understands that this Plea Agreement is binding only upon the Public Integrity Section, Criminal Division, United States Department of Justice. This Plea Agreement does not bind any other office or component of the United States Department of Justice, including the United States Attorneys' Offices, nor does it bind any state or local authorities. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the defendant.

26. By signing the Plea Agreement in the space indicated below and returning the original once it has also been signed by counsel for the defendant, the defendant acknowledges that the terms and conditions of this Plea Agreement are satisfactory.

                        COREY R. AMUNDSON
                        Chief, Public Integrity Section
                        U.S. Department of Justice

By: _____
       Jacob R. Steiner
       Trial Attorney, Public Integrity Section
       U.S. Department of Justice

Case 4:23-cr-00254   Document 21   Filed on 08/07/23 in TXSD   Page 18 of 19

## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crime to which I have agreed to plead guilty, the maximum penalties for the offense, and penalties potentially applicable to them under the Sentencing Guidelines. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Plea Agreement, and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offense to which I am pleading guilty, and I believe this Plea Agreement is in my best interest.

Date: 7 Aug 2023

_____
D'Montre Green
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely sets forth the entire Plea Agreement. I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: 7 Aug 2023

Jon Shelburne
Counsel for D'Montre Green